Appellant, Robert E. Felton, was indicted on 55 counts of possession of child pornography, in violation of Section13A-12-192(b), Code of Alabama 1975. The trial court granted the appellant's motion to compel the State to make an election of which count it wished to proceed upon. The State elected to proceed upon Count 39, which charged that appellant "did knowingly possess an obscene matter, to wit: (1) (one) film entitled 'Teen Foreign' containing a visual reproduction of a person under the age of seventeen years engaged in an act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct. . . ."
Appellant entered a plea of guilty to that charge but reserved the right to appeal on issues raised in certain of his pre-trial motions that had been denied by the trial court. The trial court accepted the guilty *Page 636 
plea and subsequently sentenced appellant to a term of imprisonment of six years.
 I
Appellant argues that the First, Fourth, and Fourteenth Amendments to the United States Constitution prohibit making the possession of child pornography in one's own home a crime and, thus, that § 13A-12-192(b), Code of Alabama 1975, under which he was convicted, is unconstitutional.
Appellant relies heavily upon the Supreme Court's ruling inStanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542
(1969), to support his argument. In Stanley, Georgia police secured a warrant to search the defendant's home for evidence of illegal bookmaking activity. While conducting this search the police discovered two films which depicted obscene matter involving adults. Stanley was arrested, indicted, and convicted under a Georgia statute which prohibited the knowing possession of obscene matter. The conviction was eventually affirmed by the Georgia Supreme Court. Stanley v. State, 224 Ga. 259,161 S.E.2d 309 (1968). The United States Supreme Court held "that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." Stanley,394 U.S. at 568, 89 S.Ct. at 1249. This Court finds that the instant case may be distinguished from Stanley.
The Ohio Supreme Court, in the recent decision of State v.Meadows, 28 Ohio St.3d 43 and 354, 503 N.E.2d 697 (1986), was confronted with the same issue that is now before us; i.e., whether a State statute prohibiting private possession of child pornography is constitutional. Ohio police executed a search warrant on the hotel room where the defendant resided and discovered materials which depicted children engaged in sexual activity. Meadows was arrested, indicted, and convicted under an Ohio statute which prohibits the knowing possession or control of material which shows a minor participating or engaging in sexual activity, masturbation, or bestiality. The Court of Appeals of Ohio, upon the authority of Stanley, held, in a split decision, that the state could not criminalize the mere possession of child pornography and reversed the conviction. The Ohio Supreme Court, in a well reasoned opinion, reversed the Court of Appeals's judgment and reinstated the conviction.
The Ohio Supreme Court concluded that, in light of the United States Supreme Court's admonition in New York v. Ferber,458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), at 756, that the "states are entitled to greater leeway in the regulation of pornographic depictions of children," the competing public policy and constitutional concerns tilted decidedly in favor of sustaining the Ohio statute. The Ohio court reasoned as follows:
 "Unlike the obscene material considered in Stanley, Miller [v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)], et al., child pornography involves, by its very nature, the physical, mental and sexual abuse, seduction and harmful exploitation of children. The depictions sought to be banned by the state are but memorializations of cruel mistreatment and unlawful conduct. Additionally, such material would continue to exploit and victimize the children shown by haunting them in the future. Ferber at 759 [102 S.Ct. at 3355]. fn. 10. We believe the interests of the state in protecting the privacy, health, emotional welfare and well-rounded growth of its young citizens, together with its undeniable interest of safeguarding the future of society as a whole, comprise exactly the type of 'compelling reasons' justifying a 'very limited' First Amendment intrusion envisioned by the Stanley
court. At the same time, the cost to the individual possessor's right of free speech, privacy and thought, caused by the State's banning of visual momentos from an episode of sexual abuse of a child, is slight. Moreover, the content value of such material is trifling and alternative means of simulation exist." Meadows, supra.
This court is in agreement with the above reasoning in every respect. *Page 637 
As was the case in Meadows, this court finds that the possession of child pornography is not protected by Stanley and that the possession of such materials may be criminalized. The State's interest in protecting its children from cruel physical, emotional, and physiological abuse occasioned by forcing a child to be the subject of child pornography far outweighs the appellant's interest in possessing such materials. Consequently, we find that the appellant's First, Fourth, and Fourteenth Amendment rights were not violated, as contended, and that Section 13A-12-192(b), Code of Alabama 1975, is constitutional.
 II
Appellant next contends that the search conducted at his drug store on August 8, 1985, pursuant to a warrant issued by a United States Magistrate on August 6, 1985, was illegal. He attacks the sufficiency of the affidavit in support of the warrant and the content of the affidavit, and alleges that there was a lack of probable cause for the issuance of the warrant and that the warrant was invalid. We find that the validity of this search is completely irrelevant to this case, as none of the material which was the basis of this prosecution was recovered as a result of this warrant. Instead, the film entitled "Teen Foreign," which was the basis of this prosecution, was seized at appellant's residence after consent to search the premises was given by the appellant.
At the time authorities were carrying out the search warrant on appellant's store, appellant consented to an interview, which was recorded. The relevant portions of that interview were as follows:
 "NICHOLS: I'm Jim Nichols with the Attorney General's Office . . .
"FELTON: Yes sir.
 "NICHOLS: This is Jeff Bush with the Postal Inspectors.
"FELTON: Yes sir.
 "NICHOLS: And you have, you know, we identified ourselves . . .
"FELTON: Oh yes.
 "NICHOLS: You have read and signed a rights waiver, is that correct?
"FELTON: Yes sir.
 "NICHOLS: You understand that this conversation is being recorded, is that correct?
"FELTON: Yes sir.
 "NICHOLS: Do you have any problems with us recording the conversation?
"FELTON: No sir.
 "NICHOLS: Okay. Today's date is 8-8-85. Time now is 10:25. This will be an interview with Mr. Robert Felton. Interview conducted by J.E. Nichols, Investigator with the Attorney General's Office, and Jeff Bush, Postal Inspector. Interview is in regards to the investigation of Mr. Felton sending and receiving pornographic material through the mail, and the possession of pornographic material. Mr. Felton, would you please raise your right hand.
"FELTON: Yes sir.
 "NICHOLS: Do you solemnly swear the statement you're about to give to be the truth, the whole truth and nothing but the truth so help you God?
"FELTON: It's the truth.
". . .
 "NICHOLS: What, this material we're speaking of, do you have some on your premises right now?
"FELTON: It would be at home, yes sir.
"BUSH: It would be at home? In your house?
"FELTON: Yes sir.
 "BUSH: What do you have, do you have a fair amount of that material here at this location? Now when you say home, you mean . . .
"FELTON: Out on the Bell Green Road . . .
"BUSH: Out on the Bell Green Road?
"FELTON: Yes sir.
"NICHOLS: What is that address?
"FELTON: It's Bell Green Road, Rt. 6.
"NICHOLS: And that's your personal residence?
"FELTON: Yes sir.
"NICHOLS: Do you live there alone?
"FELTON: No sir, with my father. *Page 638 
 "NICHOLS: Is he aware of the pornography in the house?
"FELTON: No.
 "NICHOLS: Would you be willing to show us what pornography you have and what you just spoke of that you are in possession of?
"FELTON: Yeah, uh-huh.
". . .
 "NICHOLS: I see. Do you have a consent to search form with you?
"BUSH: Yes I do.
"NICHOLS: Would you like to show him?
"BUSH: Yes.
 "FELTON: Uh-huh, okay. And would you like to, if you'd like we'll run out to the house and . . .
 "NICHOLS: Okay, would you please read that consent to search document.
 "FELTON: 'I have been informed of my constitutional right not to have a search made of my person, premises or property without search warrant or incident, it is my right to refuse to sign, unintelligible, in effect letters, papers, material, unintelligible.'
 "NICHOLS: Would you be willing, after being advised of your rights, would you be willing to consent to us to search your business here for any of this material, and also your residence?
"FELTON: Yeah.
 "NICHOLS: Okay, do you mind signing that waiver please.
"FELTON: Okay."
The above colloquy reveals that the consent to search was freely given by the appellant and that the consent was extended by appellant to both a representative of the Alabama Attorney General's Office and a representative of the U.S. Postal inspectors without apparent regard for government affiliation.
We conclude that the search and subsequent seizure of the items at the appellant's home was consensual. We are unable to perceive any reason why the items seized at the appellant's home should be considered the result of the search of the store or the "fruit of the poisonous tree" as contended by appellant. We find no reason why we should address the propriety of the search conducted upon appellant's store. For the above stated reason, we find no basis for the appellant's challenge of the search of his residence.
We find that the appellant's guilty plea was properly received. This case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.