[No. 56583–0. En Banc. February 14, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN
GEORGE FARMER, *Appellant.*

416

*Steven George Farmer,* pro se, and *Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca J. Roe, Senior Prosecuting Attorney,* for respondent.

*Jeffrey D. Cohen* on behalf of the American Civil Liberties Union, amicus curiae.

Guy, J.—Appellant solicited the services of two juvenile prostitutes. He was subsequently convicted of two counts of sexual exploitation of a minor and two counts of patronizing a juvenile prostitute. This court accepted certification and affirms in part and reverses in part.

FACTS

On February 17, 1987, in downtown Seattle, Steven George Farmer solicited the services of Eric N. for the purpose of prostitution. Although Eric indicated he was 16 years old, Farmer instructed him to say he was 15 and to call Farmer "sir". Upon arrival at Farmer's apartment, the two engaged in multiple acts of oral sex. Farmer also took nude photographs of Eric in a variety of sexually suggestive poses. When Eric attempted to leave, Farmer physically restrained him from doing so. Eric eventually fell asleep. He awoke to find Farmer engaged in anal sex with him but chose to do nothing about it, primarily due to Farmer's size. Farmer subsequently paid Eric $20 and allowed him to leave.

In late May 1987, also in downtown Seattle, Farmer solicited the services of Jim L. for the purpose of prostitution. Although Jim could not recall exactly, he believed he told Farmer he was 16. He did specifically remember, however, that Farmer had instructed him to say that he was 14 and to call Farmer "sir". Upon arrival at Farmer's apartment, Farmer took a number of suggestive and sexually explicit photographs of Jim. The two then engaged in anal sex and Farmer subsequently paid Jim $20 for his services.

On May 31, 1987, Farmer was arrested and charged with sexual exploitation of 17–year–old Robert P. for allegedly taking sexually explicit photographs of Robert. While in jail, Farmer enlisted the aid of a friend, Mavis Jones, to retrieve some photographs and drugs from Farmer's apartment. Jones and another friend, Patrick Weller, recovered the drugs as well as a shoe box containing photos of nude boys, which they subsequently destroyed.

Farmer sent Jones and Weller back to his apartment because they had retrieved the wrong photographs. On the return trip Weller recovered the correct photographs, which were of Robert. They were returned to Farmer who allegedly destroyed them.

On January 6, 1988, Farmer was charged with one count of tampering with physical evidence with regard to Robert,

two counts of sexual exploitation of a minor with regard to Jim and Eric, and two counts of patronizing a juvenile prostitute, also with regard to Jim and Eric. The charge relating to Robert was severed from the rest and is not at issue in this case.

Farmer subsequently was convicted by a jury on all four counts. Prior to sentencing, he was ordered to submit to a Human Immunodeficiency Virus (HIV) test on the State's argument that it would corroborate testimony that Farmer was HIV positive prior to his criminal conduct. The results of the test proved positive. Thus the court concluded from the testimony of Jones and Weller and the test results that prior to 1987, Farmer knew or believed he was HIV positive yet had engaged in sexual intercourse with Jim and Eric even though he was aware he might infect the two minors with the virus. The court found this to be deliberate, cruel and malicious conduct constituting a substantial and compelling reason warranting an exceptional sentence. Farmer subsequently was sentenced to 90 months' confinement on all four counts.

This court granted certification of Farmer's appeal and now affirms in part and reverses in part.

ANALYSIS

I

CONSTITUTIONALITY OF RCW 9.68A.040

Farmer challenges the constitutionality of RCW 9.68A-.040 on grounds of vagueness, overbreadth, prior restraint on free speech and equal protection.

■ A statute is presumed constitutional. *High Tide Seafoods v. State,* 106 Wn.2d 695, 698, 725 P.2d 411 (1986), *appeal dismissed,* 479 U.S. 1073 (1987) (citing *Higher Educ. Facilities Auth. v. Gardner,* 103 Wn.2d 838, 843, 699 P.2d 1240 (1985)). The party challenging the statute has the burden of proving its unconstitutionality beyond a reasonable doubt, as well as rebutting the presumption that all legally necessary facts exist. *High Tide Seafoods,* at 698. If

possible, the statute should be construed to be constitutional. *High Tide Seafoods,* at 698.

## A
### Vagueness

■ Initially, Farmer must establish he has standing to challenge the vagueness of the statute. *State v. Sherman,* 98 Wn.2d 53, 56, 653 P.2d 612 (1982). Generally, one is required to claim the statute is vague as to one's own conduct. *Sherman,* at 56. Farmer fails to provide argument or authority as to how RCW 9.68A.040 is unconstitutionally vague as to his own conduct. Instead, he relates the alleged vagueness to the conduct of third parties. Consequently, we hold Farmer has no standing to bring a vagueness challenge; therefore, this issue will not be considered.

## B
### Prior Restraint

Farmer argues that because RCW 9.68A.040 is unconstitutionally vague, it acts as a prior restraint on the right to free expression provided by article 1, section 5 of the Washington State Constitution.

Because Farmer lacks standing to challenge the vagueness of the statute, that issue was undecided. Therefore, we have no basis on which to consider whether the statute constitutes a prior restraint on free expression. Thus, the issue will not be considered.

## C
### Overbreadth

Farmer challenges RCW 9.68A.011(3)(e) as overly broad because it does not contain the words "lewd" or "lascivious" in its definition of sexually explicit conduct.

RCW 9.68A.011(3)(e) provides:

> (3) "Sexually explicit conduct" means actual or simulated:
>
> . . . .
>
> (e) Exhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer . . ..

The essence of Farmer's argument is that: (1) nudity is not harmful; (2) the statute purports to prohibit all nudity; and (3) therefore, because the terms "lewd" or "lascivious" have recognized meanings relating to obscenity for the purpose of analyzing nudity, their exclusion from the statute makes it overly broad.

Farmer's position does not follow from the express language of the statute. The statute does not purport to prohibit all nudity. Further, Farmer fails to provide rational argument or authority as to why the terms "lewd" or "lascivious" must be included in the definition of sexually explicit conduct. Moreover, obscenity was not at issue in Farmer's case and, therefore, his reliance upon it is misplaced. Consequently, we find Farmer fails to show the statute is overly broad and uphold its constitutionality.

## D
## Right to Privacy

Farmer argues the Legislature has granted 16– and 17–year–olds the right to engage in private sexual activity. Therefore, he maintains they have a First Amendment right to engage in sexual activity with whomever they wish. As such, the State could not have any legitimate interest warranting infringement upon this fundamental right because such conduct is lawful. In essence, Farmer suggests that because Jim and Eric could allegedly consent to having sexual activity with him, his actions could not be unlawful.

We disagree. Initially we find Farmer lacks standing to raise this challenge. In order to challenge the constitutionality of a law, the person or party challenging the law on behalf of itself or a representative class must show the particular action complained of has operated to the person or party's own prejudice. *High Tide Seafoods,* at 701. Farmer's standing therefore would arise where the statute affected his right to privacy and right to engage in sexual activity. However, he may not obtain standing by challenging the statute based upon how it affected Eric's and Jim's right to privacy.

■■ Finally, Farmer's argument that the State has no legitimate interest in regulating the sexual conduct of children where it infringes upon their right to privacy is in error. Our courts have recognized the right to privacy is not without its limitations. *State v. Davis,* 53 Wn. App. 502, 504, 768 P.2d 499, *review denied,* 112 Wn.2d 1014 (1989). The "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.'" *Davis,* at 504 (quoting *New York v. Ferber,* 458 U.S. 747, 757, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982)). Therefore, the State's interest in protecting its children from sexual exploitation is sufficiently compelling to justify prohibiting possession of child pornography. *Davis,* at 505; *see also Felton v. State,* 526 So. 2d 635 (Ala. Crim. App. 1986), *aff'd,* 526 So. 2d 638 (Ala. 1988); *State v. Meadows,* 28 Ohio St. 3d 43, 503 N.E.2d 697 (1986), *cert. denied,* 480 U.S. 936 (1987). Similarly, we hold that the State's interest in protecting its children from sexual exploitation and abuse justifies regulating their sexual conduct even where it infringes upon the right to privacy.

## E
### Equal Protection

Farmer argues RCW 9.68A.110(1) exempts from consideration the lawful sexual conduct of married couples. Therefore, he maintains that because unmarried 16- and 17-year-olds are included within the statute's proscriptions, it treats them differently than married couples and, consequently, violates their right to equal protection.

We disagree. Initially we find Farmer fails to provide argument or authority showing 16- and 17-year-olds comprise a cognizable class for the purpose of an equal protection challenge. Moreover, RCW 9.68A provides that all minors under the age of 18 fall within its confines. *See* RCW 9.68A.001; RCW 9.68A.011(4). Therefore, if there is a class to be considered, it would comprise all those under the age of 18.

Further, even if 16– and 17–year–olds comprise a cognizable class, Farmer was 31 years old at the time of the crimes and, therefore, could not be a member of that class. Thus, we find he suffered no actual prejudice as a result of the statute's application and therefore has no standing to assert an equal protection violation. *High Tide Seafoods,* at 701. Consequently, we hold Farmer has no basis upon which to maintain an equal protection violation.

## II
### PROHIBITION OF PORNOGRAPHY

Farmer argues that the Legislature has granted 16– and 17–year–olds the right to engage in private sexual activity and, therefore, the State has no legitimate interest in prohibiting them from posing for sexually explicit photographs.

█ We disagree. Initially, Farmer fails to provide argument or authority to support his position that 16– and 17–year–olds may pose legally for sexually explicit photographs. Moreover, we previously stated that the State's interest in preventing the sexual exploitation and abuse of its children constitutes a governmental objective of surpassing importance sufficiently compelling to justify prohibiting possession of child pornography. *Davis,* at 504–05. *See also Osborne v. Ohio,* __ U.S. __, 109 L. Ed. 2d 98, 110 S. Ct. 1691 (1990). This would necessarily include prohibiting minors from posing for such photographs.

Finally, RCW 9.68A.040 makes it unlawful to knowingly photograph minors engaged in sexually explicit conduct. Consequently, even if Farmer was correct that 16– and 17–year–olds have a right to engage in private sexual activity, the Legislature has determined such a right is limited. Thus, we hold the State's interest in protecting its children from sexual exploitation and abuse constitutes a sufficiently compelling reason justifying prohibiting minors from posing for sexually explicit photography.

## III
### CRIMINAL ASPECT OF RCW 9.68A.100

Farmer argues RCW 9.68A.100 does not make it criminal to pay or agree to pay another for sexual conduct.

We disagree. Farmer's argument ignores the express language of the statute which provides:

> A person is guilty of patronizing a juvenile prostitute if that person engages or agrees or offers to engage in sexual conduct with a minor in return for a fee, and is *guilty of a class C felony* punishable under chapter 9A.20 RCW.

(Italics ours.) RCW 9.68A.100.

The statute clearly makes it a criminal offense to pay or agree to pay another for sexual conduct.

## IV
### SUFFICIENCY OF EVIDENCE

Farmer argues there was insufficient evidence on which to convict him on either count relating to Jim. He presents his argument in two parts: (1) that the language of RCW 9.68A.100 clearly and unambiguously provides that one who pays a fee for prostitution is not guilty of a crime; and (2) there was insufficient evidence to show Farmer knew Jim was 16 years old. We disagree.

RCW 9.68A.100 provides in pertinent part:

> A person is guilty of patronizing a juvenile prostitute if that person engages or agrees or offers to engage in sexual conduct with a minor *in return* for a fee . . ..

(Italics ours.)

Farmer cites to *State v. Wilbur*, 110 Wn.2d 16, 749 P.2d 1295 (1988) for the position that only the recipient of a fee and not the payor violates the statute. Farmer misunderstands the import of that case. In *Wilbur*, police caught the defendant through use of a phony escort service. He was subsequently charged with solicitation under RCW 9A.88-.030(1), which provides:

> A person is *guilty of prostitution* if such person engages or agrees or offers to engage in sexual conduct with another person *in return* for a fee.

(Italics ours.)

This court reasoned that while the statute clearly makes prostitution a crime, it did not purport to make soliciting a prostitute a crime. Consequently, only the prostitute or recipient of the fee could violate the statute. As the defendant in *Wilbur* was not a prostitute but rather had solicited the prostitute, he clearly had not violated the statute. Consequently, the charge could not be upheld.

■ In contrast to *Wilbur*, RCW 9.68A.100 clearly and unambiguously makes *patronizing* a juvenile prostitute a crime. Thus, the individual soliciting the prostitute or the payor of the fee violates the statute. Because we find Farmer solicited the services of Jim for the purpose of prostitution, the charge was appropriate.

Farmer argues that on the basis of Jim's testimony alone, there was insufficient evidence to prove Farmer knew Jim was 16. Farmer maintains RCW 9.68A.110(3) provides a defense, which must be proved by a preponderance of the evidence, that the defendant reasonably believed the alleged victim to be at least 18 years of age based upon the declarations of the victim. Farmer claims he met this burden and argues the conviction should be reversed.

■ We disagree. In reviewing the sufficiency of evidence to support a jury verdict, appellate review is limited to whether viewing the evidence most favorably to the prosecution, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Smith,* 104 Wn.2d 497, 509, 707 P.2d 1306 (1985); *State v. Green,* 94 Wn.2d 216, 220–21, 616 P.2d 628 (1980). We will not substitute our judgment for that of the jury on factual matters. *State v. Acosta,* 101 Wn.2d 612, 624, 683 P.2d 1069 (1984).

Farmer presented no evidence to refute Jim's testimony that he believed he told Farmer he was 16. Moreover, there was no testimony offered indicating Jim's verbal or assertive gestures led Farmer reasonably to believe Jim was at least 18 years of age. Consequently, we find no evidence in the record to support Farmer's claim that he met the requisite burden of proof to invoke the statutory defense. Further, we find Farmer's knowledge of Jim's age to be a

factual issue, one we have already stated is more appropriately reserved for a jury. *State v. Acosta, supra.* Consequently, we find there was sufficient evidence presented upon which a jury could find Farmer knew Jim was 16 years old and, therefore, we uphold the convictions.

V

### DISCOVERY OF PAST JUROR INFORMATION

Farmer argues the trial court erred in denying him access to information about past juror service allegedly contained in the prosecutor's office. He maintains information as to how a juror voted in a particular case and what the verdict was would lend to an informed voir dire and ultimately would aid in securing an impartial jury.

 We disagree. Farmer offers numerous cases in support of his position. They deal with the constitutional right to an impartial jury, the importance of peremptory challenges and the importance of discovery in obtaining relevant material. *See Duncan v. Louisiana,* 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444 (1968); *Swain v. Alabama,* 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965), *overruled on other grounds in Batson v. Kentucky,* 476 U.S. 79, 100, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986); *Dennis v. United States,* 384 U.S. 855, 16 L. Ed. 2d 973, 86 S. Ct. 1840 (1966). While we acknowledge these important principles, none of the cases support Farmer's position that he is entitled to discover past juror service information. Consequently, we find these cases to be inapposite to his position.

CrR 4.7(a)(1)–(4) sets forth a prosecutor's discovery obligations in criminal proceedings. It provides in general that the prosecution has an affirmative duty to reveal the names of witnesses it intends to call, as well as to disclose any exculpatory evidence in its possession. The information Farmer seeks clearly does not fall within the provisions of this section.

CrR 4.7(e)(1) further provides that upon a showing of materiality to the preparation of the defense, and provided the request is reasonable, the court may in its discretion

require disclosure of relevant materials not covered in the general discovery provisions of sections (a), (c) or (d).

In determining relevance, the information sought must bear a reasonable relationship to the juror's qualifications to serve as a juror. *See, e.g., State v. Boggs,* 80 Wn.2d 427, 434–35, 495 P.2d 321 (1972). Farmer fails to show how the information he seeks bears a reasonable relationship to any potential juror's qualifications. Consequently, we find Farmer fails to show the relevance of such information and, therefore, we uphold the trial court's order denying discovery of that information.

## VI
### Calculation of Offender Score

Farmer argues the trial court erred in failing to treat the crimes of patronizing a juvenile prostitute and sexual exploitation of a minor as the same criminal conduct for the purpose of calculating his offender score. He maintains this error resulted in an offender score of three rather than one and, subsequently, a longer sentence.

We disagree. In support of his position Farmer refers to RCW 9.94A.400(1)(a) which defines "same criminal conduct". We note the statute was amended to include a definition of "same criminal conduct" but was not effective until July 26, 1987. *See* Laws of 1987, ch. 456, § 5. The crimes with which Farmer was charged occurred before the effective date of that amendment. We have previously declined to apply the amendment retroactively. *State v. Dunaway,* 109 Wn.2d 207, 216, 743 P.2d 1237, 749 P.2d 160 (1987). Farmer offers no reason to depart from that prior holding. Consequently, his claim will be analyzed under *State v. Edwards,* 45 Wn. App. 378, 380–82, 725 P.2d 442 (1986), *overruled in part on other grounds in State v. Dunaway, supra* at 215.

The court in *Edwards* held that crimes encompass the same criminal conduct if they are intimately related such that there was no substantial change in the nature of the criminal objective. *Edwards,* at 380–81. The trial court

should therefore focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. *Dunaway,* at 215. Often the analysis will include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same. *Dunaway,* at 215.

Applying this analysis to Farmer, we find his criminal intent in soliciting the services of Eric and Jim was seeking prostitution services. Farmer argues his intent for both crimes was sexual gratification. The subjective intent of the criminal is irrelevant. *Dunaway,* at 214–15. Moreover, sexual gratification is not a cognizable criminal offense. Consequently, while sexual gratification may have been Farmer's ultimate motive, we find his criminal objective was to solicit the services of the two minors for the purposes of prostitution.

Analyzing the crime of sexual exploitation of a minor, whether for his own personal gratification or for the purpose of sale, we find Farmer's objective intent was to photograph the minors engaged in sexually explicit conduct. We find this intent to be different from the intent to solicit the services of a juvenile prostitute.

Additionally, we find that one crime did not further the other. Although the crimes occurred at relatively the same time and in the same place, there is no requirement that these factors be dispositive in assessing whether the crimes encompass the same criminal conduct. Consequently, we find Farmer's intent as to each crime different and, therefore, uphold the trial court's determination that the crimes do not constitute the same criminal conduct.

## VII
### Constitutionality of HIV Test

Farmer argues the order requiring him to submit to an HIV test for the purpose of imposing the sentence violated his right to privacy and right to due process. Farmer's argument is premised upon the fact that absent one of the

enumerated exceptions, RCW 70.24.330 prohibits nonconsensual HIV testing. Therefore, Farmer maintains the statute creates a liberty interest and a subsequent right to refuse the test. As none of the statutory exceptions applied to him, he argues the order unconstitutionally denied him this liberty interest.

We agree with Farmer's conclusion that the nonconsensual test was improperly ordered; however, rather than creating the liberty interest, the statute sets forth legislatively recognized exceptions to an already existent constitutional right of privacy.

The United States Supreme Court recognizes such a fundamental right of privacy to exist in matters relating to freedom of choice regarding one's personal life. *See Boddie v. Connecticut,* 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971). We recognize a similar right to privacy to emanate from the specific guaranties of the Bill of Rights, from the language of the First, Fourth, Fifth, Ninth and Fourteenth Amendments, as well as from article 1, section 7 of the Washington Constitution. *In re Colyer,* 99 Wn.2d 114, 119–20, 660 P.2d 738 (1983) (citing *Griswold v. Connecticut,* 381 U.S. 479, 484, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965)).

Thus, we have acknowledged the right to privacy provides individuals with the freedom of choice to refuse electroconvulsive therapy, to decline medical treatment in certain instances and to oppose blood tests in certain instances. *In re Schuoler,* 106 Wn.2d 500, 506–07, 723 P.2d 1103 (1986); *In re Colyer,* at 120; *State v. Meacham,* 93 Wn.2d 735, 738, 612 P.2d 795 (1980).

This right to privacy is not absolute in nature. *See In re Schuoler,* at 508; *State v. Meacham,* at 738 (citing *Whalen v. Roe,* 429 U.S. 589, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977)). A fundamental liberty interest may be justifiably limited by a narrowly drawn, compelling state interest. *In re Schuoler,* at 508. We have recognized four such interests: (1) the preservation of life; (2) the protection of the interests of innocent third parties; (3) the prevention of suicide;

and (4) the maintenance of the ethical integrity of the medical profession. *In re Schuoler,* at 508. We find these judicial exceptions do not apply to Farmer.

The Legislature has also recognized a right of privacy to exist in the sensitive area of sexually transmitted diseases. *See* RCW 70.24.015. Consequently, it has provided few exceptions where nonconsensual HIV testing may occur.

RCW 70.24.330 provides:

> No person may undergo HIV testing without the person's consent except:
>
> (1) Pursuant to RCW 7.70.065 for incompetent persons;
>
> (2) In seroprevalence studies where neither the person whose blood is being tested know the test results nor the persons conducting the tests know who is undergoing testing;
>
> (3) If the department of labor and industries determines that it is relevant . . . or;
>
> (4) As otherwise expressly authorized by this chapter.

As Farmer correctly argued, none of these statutory exceptions apply to him.

In looking to other jurisdictions, we find they reach a conclusion similar to ours. *See Harris v. Thigpen,* 727 F. Supp. 1564 (M.D. Ala. 1990); *Dunn v. White,* 880 F.2d 1188 (10th Cir. 1989), *cert. denied,* 110 S. Ct. 871 (1990). In *Glover v. Eastern Neb. Comm'ty Office of Retardation,* 867 F.2d 461 (8th Cir. 1989), *cert. denied,* 110 S. Ct. 321 (1989) a multicounty infectious disease policy required mandatory HIV testing. The County argued the testing was necessary to help isolate and prevent the transmission of the disease. The court reasoned the risk of transmission in the community offices was minuscule and, therefore, did not constitute a compelling reason justifying the test. Therefore, the court held it was an unconstitutional violation of the right to privacy.

This comparative analysis reflects our concern that nonconsensual HIV testing must be supported by a legitimate, compelling state interest. Where there is a legitimate compelling state interest, HIV testing of a convicted criminal defendant may be justified. However, in Farmer's case, the HIV test was ordered to corroborate testimony he was

HIV positive prior to contacting Eric and Jim. Expert testimony of Dr. H. Hunter Handsfield established that the results of the test could not be related back in time. Thus, we find the test was of no use in corroboration and, therefore, did not constitute a compelling reason justifying imposing upon Farmer's right to privacy. Consequently, we reverse the trial court's order requiring Farmer to submit to the HIV test.

## VIII
### EXCEPTIONAL SENTENCE PROPER

However, we find even without the benefit of the test, the exceptional sentence is justified in Farmer's case. RCW 9.94A.210(4) provides that in order to reverse a sentence outside the sentence range, the reviewing court must find the reasons supplied by the sentencing judge do not justify a sentence imposed outside the standard range for that offense or that the reasons supplied by the sentencing judge are not supported by the record or that the sentence imposed was clearly excessive or too lenient. Leniency is not at issue in this case.

We find that based on the testimony of Jones and Weller, the trial court found Farmer knew or believed he was infected with the AIDS virus at the time he engaged in sexual activity with Eric and Jim. Thus, the court found Farmer willingly exposed both minors to the AIDS virus without regard for their welfare. The court found this action constituted a deliberate, cruel and malicious act that could result in their deaths. RCW 9.94A.390(2)(a) provides that deliberate cruelty to a victim during the commission of a crime is an aggravating circumstance justifying an exceptional sentence. Consequently, even without the HIV test results we find there were sufficiently compelling reasons warranting the exceptional sentence.

Further, we find that the sentence imposed was not excessive within the meaning of RCW 9.94A.210(4). *State v. McAlpin,* 108 Wn.2d 458, 467, 740 P.2d 824 (1987) (citing *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d

1123 (1986)). A sentence will be deemed clearly excessive only if the trial court abused its discretion in fixing the duration of the sentence. *State v. McAlpin,* at 467. When some of the trial court's justifications for imposing an exceptional sentence are improper, a reviewing court can nonetheless affirm the sentence if the principal justifications on which the trial court relied are proper and the reviewing court is confident the trial court, on remand, would impose the same sentence absent the improper justifications. *In re George,* 52 Wn. App. 135, 148–49, 758 P.2d 13 (1988) (citing *State v. Tunell,* 51 Wn. App. 274, 284, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988)).

The sentencing court stated its intention that Farmer serve at least 5 years regardless of time off for good behavior. Moreover, we note the sentence imposed was below the statutory maximum allowed. Finally, we find the principal justifications upon which the sentencing court relied were proper. Therefore, we decline to remand this case for resentencing and uphold the length of the sentence.

## IX
### Due Process Argument

Farmer argues his right to due process as guaranteed by the Fourteenth Amendment and article 1, section 7 of the Washington State Constitution was violated by the court's order requiring the nonconsensual HIV test. Because we find the test unconstitutional on First Amendment grounds, we need not consider the due process challenge.

Moreover, issues not supported by argument and citation to authority will not be considered on appeal. *Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 29, 593 P.2d 156 (1979). We find that Farmer fails to provide either rational argument or authority as to how his right to due process was violated by the court's order.

## X
### SUFFICIENCY OF FINDINGS

Farmer argues that the trial court's findings were legally insufficient to justify an exceptional sentence. Specifically, he maintains that: (1) the court could not impose an exceptional sentence for the crime of sexual exploitation of a minor because RCW 9.68A.040 does not proscribe the act of sexual intercourse; therefore, because the court's sentencing findings were based on sexual intercourse, there was no basis for the findings; (2) the court could not find his actions deliberate, cruel and malicious because such actions fall within the definition of assault in the second degree and reckless endangerment, and he was not charged with either of those crimes; and (3) his actions could not rise to the level of deliberate cruelty.

 We find these issues to be unsupported by citation to authority. Consequently, we find them to be without merit and thus they will not be considered. *Transamerica,* at 29.

## XI
### CRUEL AND UNUSUAL PUNISHMENT

Farmer argues his exceptional sentence constitutes cruel and unusual punishment within the context of the eighth amendment to the United States Constitution and article 1, section 14 of the Washington State Constitution.

 Only punishment which is grossly disproportionate to the gravity of the offense violates the state and federal constitutional guaranty against cruel and unusual punishment. *State v. Creekmore,* 55 Wn. App. 852, 870, 783 P.2d 1068 (1989), *review denied,* 114 Wn.2d 1020 (1990). "A punishment is grossly disproportionate only if . . . the punishment is clearly arbitrary and shocking to the sense of justice." *State v. Smith,* 93 Wn.2d 329, 344–45, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980) (citing *Kasper v. Brittain,* 245 F.2d 92 (6th Cir.), *cert. denied,* 355 U.S. 834 (1957)).

Farmer's sentence was calculated as follows:

| Count | Offender Score | Seriousness Level | Range | Maximum Term |
|-------|-----------|-----------|--------------|----------|
| 1 | 3 | VII | 31–41 months | 5 years |
| 2 | 3 | III | 9–12 months | 5 years |
| 3 | 3 | III | 9–12 months | 5 years |
| 4 | 3 | VII | 31–41 months | 5 years |

Counts 1 and 4 deal with the charges of sexual exploitation of a minor, which constitute a class B felony. RCW 9.68A-.040. The maximum sentence for a class B felony is 10 years. RCW 9A.20.021(b). We note that the judge mistakenly treated the crimes as class C felonies, carrying maximum sentences of 5 years. RCW 9A.20.021(c). We find this would have no effect on Farmer's sentence and therefore hold it constitutes harmless error.

Farmer received 90 months' confinement on all four counts instead of the maximum sentence of 30 years or 360 months. This amounts to one–fourth the total sentence he might have received. Moreover, his sentence is below the maximum presumptive range of 106 months. *See* RCW 9.94A.310. Farmer fails to show how this sentence is so grossly disproportionate to the gravity of his offenses that it constitute cruel and unusual punishment. Further, the sentence was within the guidelines provided by law and, therefore, cannot be said to be arbitrary or shocking to the sense of justice. *See* RCW 9.94A.310.

Consequently, we hold the sentence imposed does not constitute cruel and unusual punishment under either our state or the federal constitution, and thus uphold the length of the sentence.

## CONCLUSION

Because expert testimony clearly established that the results of the nonconsensual HIV test could not be related back in time to corroborate testimony that Farmer had AIDS, we find there was no legitimate, compelling state interest that would constitutionally justify ordering the test in violation of Farmer's right to privacy. Consequently, we

reverse the trial court's order compelling the test. We affirm on all other issues, including the length of the sentence.

DORE, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., and CALLOW, J. Pro Tem., concur.

After modification, further reconsideration denied July 2, 1991.