[No. 13408-0-II.    Division Two.    August 21, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE R. BOHANNON, *Appellant.*

*James K. Morgan,* for appellant.

*C.C. Bridgewater, Jr., Prosecuting Attorney,* and *Douglas S. Boole, Deputy,* for respondent.

ALEXANDER J. — George R. Bohannon appeals his conviction for sexual exploitation of a minor. He claims that the statutes under which he was convicted are unconstitutionally vague and overbroad. He also contends that the trial court erred in (1) not suppressing evidence that was seized pursuant to a search warrant, (2) not instructing the jury on lesser included offenses and (3) admitting and withholding certain evidence. We affirm.

On June 5, 1988, Bohannon allegedly took sexually explicit photographs of his 16-year-old stepdaughter, T.M.B. He was thereafter charged, pursuant to RCW 9.68A.040(1)(b),[1] with sexual exploitation of a minor.

In January 1987, T.M.B. moved in with her mother, Sheralee, her stepfather, George Bohannon, his son, Jeff, and her half-sister, Lindsey. T. M.B. testified that Bohannon had, on several occasions, before and after the move, made inappropriate sexual advances toward her, including requests that she pose for nude photographs.

During the 1988 school year, T.M.B. and a high school girl friend planned to vacation in California. T.M.B.

---

[1] RCW 9.68A.040(1)(b) in effect at the time the crime was committed provided as follows:

"(1) A person is guilty of sexual exploitation of a minor if the person:

". . . .

"(b) Aids, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; . . .".
Amended by Laws of 1989, ch. 32, § 2, effective June 23, 1989.

approached Bohannon for money for the trip, offering to do odd jobs and chores around the house in return for the money. She claimed that Bohannon responded by telling her he would only give her the money if she agreed to pose for nude photographs. She said that she refused to do so.

According to T.M.B., Bohannon again approached her on June 5, 1988, and asked her to pose for the nude photographs. She said that she at first refused, but later agreed to do so "[b]ecause there was no other way [she] would be able to get the money, and [she] needed it to live if [she] was going to California." She said that Bohannon took 19 nude photographs of her, instructed her how to pose and paid her $100, telling her that he was taking the pictures to keep in his locker at work.

Initially, T.M.B. did not tell anyone about the incident. In late September or early October of 1988, T.M.B. started counseling sessions with Roger Lucas, a pastor at her church. During one of these sessions, T.M.B. told Lucas and another counselor that Bohannon had taken photographs of her. Lucas testified that in March of 1989 he told T.M.B.'s mother, Sheralee, about the photographs. On the advice of a social worker, Sheralee told T.M.B. that she knew about the photographs. The Longview police were then informed.

Based on the information provided by T.M.B. and her mother, the Longview police sought a warrant to search Bohannon's lockers at his workplace. A Cowlitz County District Court judge authorized issuance of the warrant and it was served on March 30, 1989. A search of Bohannon's lockers produced several boxes of magazines which apparently contained nude photographs of women. In another locker they found 19 photographs of T.M.B. as well as another photograph, which depicted a friend of T.M.B.'s in a state of partial undress.

Bohannon sought before trial to have the magazines suppressed from evidence. The trial court denied Bohannon's motion. The State did not, however, offer the magazines in evidence at trial. The State's motion to suppress the photograph of T.M.B.'s friend was granted by the trial court.

Bohannon testified and denied that he had taken the photographs. He claimed that T.M.B. brought the photographs to his workplace in early June of 1988 and offered to sell them to him for $100. Bohannon's son, Jeff, testified that T.M.B. also tried to sell the photographs to him. Bohannon claimed that Jeff told him about T.M.B.'s earlier attempt to sell the photographs to Jeff before T.M.B. brought the photographs to him. Bohannon testified that he agreed to buy the photographs from T.M.B. only to avoid the embarrassment of having her try to sell them elsewhere. He said that he purchased the photographs and then tossed them in the back of his locker, forgetting about them.

Evidence was presented at trial that T.M.B. had posed, in the past, for nude photographs taken by a boyfriend. Evidence, offered by Bohannon, that T.M.B. had stated on different occasions that she had aspirations of becoming a Playboy bunny was ruled inadmissible by the trial court.

Bohannon was convicted of the charge by a jury and he appeals.

I

CONSTITUTIONALITY OF STATUTES

Bohannon argues that RCW 9.68A.040(1)(b) and 9.68A.011(3)(e) are unconstitutionally vague or overbroad. More specifically, he contends that the term "sexually explicit conduct", defined in RCW 9.68A.011(3)(e), is so vague and overbroad as to allow the authorities to arbitrarily decide what conduct is or is not prohibited.

■ Pursuant to article 1, section 1 of the Washington Constitution, the State Legislature is empowered to enact

laws to promote the health, peace, safety, and general welfare of the people of the state. *State v. Brayman*, 110 Wn.2d 183, 192-93, 751 P.2d 294 (1988). Broad discretion is vested in the Legislature to determine what the public interest demands and what measures are necessary to protect the same. *State v. Brayman*, 110 Wn.2d at 193; *Reesman v. State*, 74 Wn.2d 646, 650, 445 P.2d 1004 (1968).

▪ It is well established that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *State v. Farmer*, 116 Wn.2d 414, 422, 805 P.2d 200 (1991) (quoting *State v. Davis*, 53 Wn. App. 502, 504, 768 P.2d 499, *review denied*, 112 Wn.2d 1014 (1989)); RCW 9.68A.001. In our judgment, the State's interest in protecting its children from sexual exploitation is sufficiently compelling to prohibit the taking of sexually explicit photographs of a minor.

Nevertheless, even where an enactment is a valid exercise of the Legislature's police power, specificity in the penal statutes and ordinances is also required to comply with the requirements of due process under the Fourteenth Amendment. *Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366, 78 A.L.R.4th 1115 (1988); *Seattle v. Rice*, 93 Wn.2d 728, 731, 612 P.2d 792 (1980).

## A
### Vagueness

▪ ▪ To meet constitutional muster a statute must provide fair notice to citizens as to what conduct is proscribed and it must also protect against arbitrary enforcement of the laws. Under the Fourteenth Amendment, a "statute is 'void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Eze*, 111 Wn.2d at 26 (quoting *O'Day v. King Cy.*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988)).

The required degree of specificity is, however, limited in two significant ways: (1) a statute is presumed to be constitutional "unless its unconstitutionality appears beyond a reasonable doubt." *Eze*, 111 Wn.2d at 26; and (2) impossible standards of specificity are not required. "Consequently, a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Eze*, 111 Wn.2d at 27.

Here, Bohannon was charged with aiding or causing a minor to engage in "sexually explicit conduct", knowing that the conduct would be photographed. RCW 9.68A-.040(1)(b). "Sexually explicit conduct" is defined, in part, as "[e]xhibition of the genitals or unclothed pubic or rectal areas of any minor, . . . for the purpose of sexual stimulation of the viewer;" RCW 9.68A.011(3)(e). Bohannon contends that the language "for the purposes of sexual stimulation of the viewer" allows for arbitrary determinations as to which nude exhibitions are sexually stimulating. He suggests, for example, under that definition, the taking of a photograph of a naked baby in a bathtub could fall within the reach of the statute.

■ Legislative definitions generally control in construing the statutes in which they appear. *Seattle v. Shepherd*, 93 Wn.2d 861, 866, 613 P.2d 1158 (1980). Accordingly the constitutional sufficiency of the language turns on the adequacy of the definition contained in the statute.

■ The language "for the purposes of sexual stimulation of the viewer", rather than making the statute vague, serves to clarify and narrow the reach of the statute. It is this language that would permit a trier of fact to distinguish between pictures of the sort taken here and those taken for "legitimate scientific, medical, or educational activities." The latter pictures, the Legislature specifically did not intend to prohibit. RCW 9.68A.001.

In *State v. Schimmelpfennig*, 92 Wn.2d 95, 103, 594 P.2d 442 (1979), a case in which the term "for purposes of

sexual misconduct" was challenged as unconstitutionally vague, our Supreme Court said:

> any person of common understanding, contemplating asking a small child to climb into a van and engage in sexual activities need not guess as to the proscription and penalties of the statute.

*Schimmelpfennig*, 92 Wn.2d at 103. We believe, similarly, that any person of common understanding would know that causing photographs to be taken of a nude 16-year-old girl would fall within the proscription of RCW 9.68A.040(1)(b) and .011(3)(e).

## B
### Overbreadth

We have found it difficult to determine precisely what Bohannon's argument is on overbreadth. It appears, however, that he is claiming that the statute is overbroad because it interferes with the *victim's* First Amendment rights of free expression.

■ Bohannon does not have standing to make such a challenge here. In order to challenge the constitutionality of a statute, the person challenging it must show that the complained of statute has operated to his own prejudice. *Farmer*, 116 Wn.2d at 421. Bohannon would only have standing to make the challenge if the statute affected his right to nude expression. He clearly does not have standing to claim that T.M.B.'s nudity is his protected expression.

## II
### SEARCH WARRANT

Bohannon challenges the validity of the search of his lockers. He contends that the search warrant should not have been issued because the information provided to the police was too stale or remote to establish probable cause that the items sought would be in his locker.

■ "An affidavit in support of a search warrant must set forth sufficient facts and circumstances to establish a reasonable probability that criminal activity is occurring

or about to occur." *State v. Petty*, 48 Wn. App. 615, 621, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987). The test for staleness of information contained in a search warrant affidavit is a commonsense test of determining if the facts are sufficient to justify a conclusion by a neutral magistrate that the property sought is still on the person or premises to be searched. *State v. Petty, supra; State v. Anderson*, 41 Wn. App. 85, 95, 702 P.2d 481 (1985), *rev'd*, 107 Wn.2d 745, 733 P.2d 517 (1987); *State v. Riley*, 34 Wn. App. 529, 534, 663 P.2d 145 (1983). If the facts and circumstances recited in the affidavit support the conclusion that there is continuing and contemporaneous possession of the property sought to be seized, then the information is not stale for purposes of probable cause. *State v. Johnson*, 17 Wn. App. 153, 156, 561 P.2d 701, *review denied*, 89 Wn.2d 1001 (1977).

The affidavit presented to the Cowlitz County District Court judge in support of the warrant contained a police detective's recounting of statements made to him by T.M.B. and her mother. According to the detective, T.M.B. stated that at the time the photographs were taken, Bohannon told her that he would be keeping them in a private place at his workplace. The affidavit goes on to reveal that T.M.B. told the officer that over 6 months later she demanded that Bohannon return the photographs and he responded that "they were still in his locker at his place of employment . . .."

These facts are sufficient to support a conclusion that the photographs would still be in one of Bohannon's lockers at his workplace. Bohannon's statements to T.M.B. reveal that he had kept the photographs in his locker for 6 months. That fact alone supports a logical inference that he would have possession of the photographs on the day of the search, only 2 months after he last told T.M.B. that he was keeping them at work.

## III
### JURY INSTRUCTIONS

■ Bohannon contends that the trial court erred in refusing to give his proposed jury instructions on two lesser included offenses. In Washington, a defendant is entitled to an instruction on a lesser included offense, when requested, if each of the elements of the lesser offense is a necessary element of the offense charged. *State v. Pelkey*, 109 Wn.2d 484, 488, 745 P.2d 854 (1987); *State v. Workman*, 90 Wn.2d 443, 445, 584 P.2d 382 (1978). "Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime." *Pelkey*, 109 Wn.2d at 488; *State v. Falco*, 59 Wn. App. 354, 356, 796 P.2d 796 (1990).

■ Bohannon contends that the trial court should have instructed the jury that "possession of depictions of a minor" was a lesser included offense of the crime charged. At the time Bohannon committed the crime with which he was charged, RCW 9.68A.070 provided in part as follows:

> (1) A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a gross misdemeanor.
> (2) As used in this section, *"minor" means a person under sixteen years of age.*[2]

(Italics ours.)

According to the record, T.M.B. was 16 years old at the time of the crime. Consequently, Bohannon could not have been convicted of the crime of possession of depictions of a minor, the victim not being a minor according to RCW 9.68A.070. It was, therefore, not error for the trial court to refuse to give the requested instruction.

■ Similarly, it was not error for the court to refuse to instruct the jury that "[c]ommunication with a minor for immoral purposes", RCW 9.68A.090, was a lesser included offense of sexual exploitation of a minor. RCW 9.68A.090

---

[2]Chapter 9.68A.011(4) now provides that a minor is any person under eighteen years of age. Amended by Laws of 1989, ch. 32, § 1, effective July 23, 1989.

provided in pertinent part as follows: "A person who communicates with a minor for immoral purposes is guilty of a gross misdemeanor . . .." "Communication" for purposes of this statute has been judicially interpreted to mean "any spoken word or course of conduct with a minor for purposes of sexual misconduct . . .." *Schimmelpfennig*, 92 Wn.2d at 103-04; *Falco*, 59 Wn. App. at 358.

In our judgment, it is possible for a person to commit the offense of sexual exploitation of a minor without committing the crime of communication with a minor for immoral purposes. For example, an individual could take sexually explicit photographs of a child at a time when the child was unaware that the pictures were being taken. Under those circumstances, the photographer could still be found guilty of sexual exploitation of a minor, notwithstanding the fact that he had not communicated with the child by conduct or word, if he were to use or sell the photographs "for the purpose of sexual stimulation of the viewer". Without "communication", being invariably part of both offenses, RCW 9.68A.090 is not a lesser included offense of the greater crime. *See Falco*, 59 Wn. App. at 359. The trial court did not err in refusing the instruction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Affirmed.

PETRICH, A.C.J., and MORGAN, J., concur.