## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SHANGRI-LA COMMUNITY CLUB, INC., a Washington nonprofit corporation,<br><br>                    Respondent,<br><br>          v.<br><br>MELVIN STRUCK & MARY STRUCK, h/w; KAREN STRUCK, as her separate property if married,<br><br>                    Appellants. | No. 76099-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 16, 2018 |

LEACH, J. — Melvin, Mary, and Karen Struck appeal the trial court's decision and judgment for the Shangri-La Community Club Inc. They challenge the court's factual findings and legal conclusions about Shangri-La's authority to shut off water to their lot, water charges, and their claimed damages. Because substantial evidence supports the trial court's findings and those findings support the trial court's legal conclusions, we affirm.

### BACKGROUND

Shangri-La is a homeowners' association. The association serves a residential subdivision known as "Shangri-La on the Skagit." The Strucks own two lots in the subdivision, lot 16 and lot 17.

As required by its governing documents, Shangri-La operates a system providing water to the lots within the subdivision. The Shangri-La declaration of restrictive covenants and reservations provides each lot in the subdivision with one hookup to the water system. Members pay annual assessments for the operation and maintenance of the water system. Each lot owner must pay to Shangri-La the charges assessed by the Shangri-La board of directors even if water is not used by the lot owner.

The Strucks paid the assessments from 1995 through August 2005. The Strucks stopped paying assessments for both lots after August 31, 2005. They claimed they did not receive water at lot 16 and need not pay for water that was not available to that lot. They stopped paying for lot 17 to get the association's attention.

The covenants authorize the association to record a lien for assessments remaining unpaid for 60 days. Shangri-La recorded a lien against lot 16 for unpaid water charges on October 30, 2006.

The Strucks asked Shangri-La for water for lot 16 in June 2006 and in June 2007. Shangri-La finally provided water to lot 16 in October 2009.

Shangri-La later notified the Strucks that the water supply for lot 16 would be shut off on July 21, 2010, due to nonpayment. Water to lot 16 was shut off on July 22, 2010.

Shangri-La filed a lawsuit to foreclose its lien and recover a judgment against the Strucks. The Strucks counterclaimed for damages. After a bench trial,

the trial court determined that Shangri-La is entitled to a judgment for unpaid annual water assessments since 2005 and to have the lien foreclosed. It decided, however, to offset against the judgment the charges from July 2006 to October 2009, when Shangri-La unreasonably failed to provide water. The trial court entered a judgment for Shangri-La. The Strucks appeal.

## STANDARD OF REVIEW

When reviewing a trial court's decision after a bench trial, we review the trial court's findings to determine if substantial evidence supports them.[1] "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise."[2] We treat unchallenged findings of fact as true on appeal.[3] We review the trial court's conclusions of law de novo.[4]

## ANALYSIS

### Obligation To Pay

First, the Strucks contend that they have no obligation to pay water assessments when they were not receiving water. But the Strucks do not make any arguments about their obligation to pay on appeal except to say that to require them to pay for water when they received no water is absurd. They do not challenge the trial court's finding that lot owners must pay water assessments even

---

[1] Willener v. Sweeting, 107 Wn.2d 388, 393, 730 P.2d 45 (1986).
[2] Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).
[3] In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).
[4] Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

if they do not use water. And they acknowledge that the central dispute in this case is whether Shangri-La has the authority to shut off water for nonpayment. Because the Strucks do not provide any argument or citation to authority about this issue, we do not consider it.[5]

### Right To Shut Off Water

The Strucks challenge findings related to the trial court's conclusion that Shangri-La had the authority to shut off the water.

First, the Strucks challenge the trial court's conclusion that "[t]he covenants grant the membership the right to change the covenants, and did so in granting the ability to shut off water to lots." We agree that this statement is incorrect because Shangri-La amended its bylaws and not its covenants to provide authority to shut off water service. Shangri-La asserts, however, that the trial court made a harmless mistake in wording its conclusion. We agree that this error is essentially a scrivener's error. A few sentences later, the trial court found that the board adopted amended bylaws about the authority to shut off water. Thus, from context, it is clear that the trial court meant to say that the covenants grant the right to change the bylaws.

Next, the Strucks challenge the trial court's conclusion that the bylaws gave Shangri-La the authority to shut off its water. The Strucks claim that the 2009

---

[5] RAP 10.3(a)(6); Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248-49, 350 P.3d 647 (2015) ("'[I]ssues not supported by argument and citation to authority will not be considered on appeal.'" (alteration in original) (quoting State v. Farmer, 116 Wn.2d 414, 432, 805 P.2d 200 (1991))).

amended bylaws are not valid because Shangri-La did not properly adopt them. They assert that Shangri-La did not follow the existing bylaw amendment procedures. The Strucks specifically challenge the court's finding that "[n]otice was sent to the membership before the meeting and a vote was taken." We conclude that substantial evidence supports these findings.

As a corporation, Shangri-La must act in accordance with its governing documents as well as general law.[6] "Unless otherwise provided in the governing documents, an association may: (1) Adopt and amend bylaws, rules and regulations."[7] Here, the 2006 bylaws state, "These bylaws may be amended by a majority vote of the Directors of the Corporation at a Quarterly/Annual meeting thereof and ratified by members presence [sic]."

On August 22, 2009, membership passed a motion about water shutoff. The motion provided that

> [A]ny club member currently over one year past due on their account will be given a 30 day notice, then be subject to water shutoff. Furthermore, any club member whose account becomes six months past due in the future, be given a 30 day notice, then be subject to water shutoff.

On November 14, 2009, the Shangri-La board adopted amended bylaws that contained provisions concerning the water system. The November 14, 2009, board meeting minutes state, "The meeting began with review of proposed bylaws

---

[6] Twisp Mining & Smelting Co. v. Chelan Mining Co., 16 Wn.2d 264, 294, 133 P.2d 300 (1943).

[7] RCW 64.38.020(1).

changes. The new bylaws were adopted unanimously." The amended bylaws state,

> The Board of Directors shall have the authority to collect through lien, foreclosure and or collection service, the past due amounts on any unpaid water assessment or dues accounts, including interest, penalties and legal fees. Furthermore, the board shall have the authority to shut off water to any member more than six (6) months past due after giving thirty (30) days' notice.

This is substantial evidence that the board voted and amended the bylaws.

The Strucks also challenge the trial court's finding that notice was sent to the membership before the board amended the bylaws in 2009. The bylaws provide that "[a] quarterly letter with agenda, place and time of the quarterly meetings shall be sent with summary of the previous meeting to membership." But the trial court determined notice was sent to membership, and substantial evidence supports this conclusion.

Specifically, the August 22, 2009, minutes state that notice would be sent to membership about the proposed changes. The August 22, 2009, annual meeting minutes state,

> Mr. Mike Cucchetti was recognized and presented an amended set of Bylaws that he proposed we adopt. A good discussion followed. It was agreed by the majority that some or all of these changes have merit, but require some thoughtful review and input from club members. A copy of these proposed changes will be mailed to all members so they may voice their opinion. A vote on these proposed changes may be scheduled for a future meeting.

The board president testified that the board had a practice of sending out notice of board meetings. The board's November 14, 2009, minutes show the bylaws were adopted. Mr. Struck did not testify that he did not receive notice of this board

meeting. Thus, substantial evidence supports the trial court findings that notice was sent and the board properly adopted the bylaws. These findings support the trial court's conclusion that Shangri-La had the right to shut off water.

The trial court concluded that Shangri-La gained the power to shut off water on August 22, 2009, the date of the annual membership meeting in which the members voted on a motion to shut off water if members failed to pay assessments. The board did not actually gain the power to shut off water until it amended its bylaws on November 14, 2009. The trial court's error on this point is harmless because Shangri-La shut off the Strucks' water in July 2010. Thus, Shangri-La did not shut off the water before it had the authority to do so.

### Value of Loss of Use of Lot 16

The Strucks also challenge the trial court's finding that they did not prove the value of their loss of use of lot 16 from July 1, 2006, through October 4, 2009.

The trial court decided that Shangri-La was entitled to judgment for unpaid annual water assessments from September 1, 2005, with interest. It also decided the Strucks were entitled to an offset from the judgment for charges from July 1, 2006, the month after the initial request for water, to October 4, 2009, when the water was properly shut off, because Shangri-La unreasonably delayed providing water to lot 16. But the trial court found that the Strucks did not prove the value of the loss of their property during this time. The Strucks claimed that their losses were $500 per month in rental income. To show this loss, they introduced a 2007 letter from Melvin Struck to the board president stating, "The lack of community

water to Lot #16 has cost me $500 per month in lost rental income." They also introduced a residential lease agreement from 2013 that showed they would charge $500 in rent beginning in January 2014. The trial court found that this proposed lease and Struck's letter were not enough to prove the value of the loss. The trial court did not abuse its discretion in not finding this evidence persuasive.

### Annual Water Rates

Next, the Strucks challenge the trial court's finding about the annual water rates. The trial court found that the annual rates were $390 per year for 2005 and 2006 and $240 per year since 2007. It admitted, however, that no evidence showed how these amounts were established.

The Strucks contend that Shangri-La failed to meet its burden to show damages. But the former Shangri-La treasurer testified that the dues were $390 in 2005 and 2006 and $240 since 2007. And the 2008 community meeting minutes also reflect the $240 charge. This constitutes substantial evidence to support the trial court's findings about the annual water rates.

The Strucks point out that no document in the record shows that Shangri-La had the authority to charge these amounts. The restrictive covenants authorize the board to set assessment rates by a vote of 60 percent of the board. No evidence in the record shows that any such vote occurred. But even without evidence that the board ever voted to increase the annual charges, the treasurer's testimony and the payment by most members without objection for many years support a reasonable inference that the board adopted these amounts.

<u>Attorney Fees</u>

Both parties request fees on appeal. The covenants and bylaws provide for Shangri-La's recovery of costs and attorney fees in a lawsuit to foreclose an assessment lien.[8] As the prevailing party in this appeal, Shangri-La is entitled to recover fees.

CONCLUSION

We affirm the trial court and award Shangri-La fees on appeal, subject to its compliance with RAP 18.1(d).

_Leach, J._

WE CONCUR:

_Spearman, J._

_Cox, J._

---

[8] The declaration of restrictive covenants and reservations provides, "From and after recording such notice, such lot shall be subject to a lien to the community club as security for such assessment, interest and fees and such lien may be foreclosed in the manner of a mortgage on real estate, and in such action the community club shall recover all costs including costs of searching title and reasonable attorney fees."