33 P.3d 743 (2001)
108 Wash.App. 799
In re Personal Restraint Petition of Cynthia MARLER, Petitioner.
No. 45086-7-I.
Court of Appeals of Washington, Division 1.
October 22, 2001.
*744 Timothy Ford, Seattle, for Cynthia Marler.
John Blonien, Assistant Attorney General-Corr. Division, William Myers, Assistant Attorney General, for the State.
ELLINGTON, J.
Cynthia Marler challenges various decisions relating to her parole and to calculation of her good time. Marler was convicted of first degree murder and sentenced to life in prison. The Parole Board initially set her minimum term at the high end of the SRA standard range. At the end of that term, the Board denied parole and increased her minimum term by 18 months. In March 2000, the Board found Marler "conditionally parolable" subject to a Mutual Agreement Program (MAP), which the Department of Corrections was to prepare. Over a year later, *745 however, no such program is yet in place. We agree with Marler that delay in implementation of the MAP amounts to indefinite confinement and abdicates determination of her minimum term to DOC, in violation of both the statute and the Board's own policies. We remand to the Board with instructions to fix a new minimum term and to delineate clearly the effect of a MAP upon accrual of statutory good time.

FACTS
In 1980, Cynthia Marler came to Washington to kill Wanda Touchstone, which she did by shooting her in the head and neck. According to Marler, she had been hired to kill Touchstone in exchange for cash and four acres of property. Marler was found guilty and sentenced to a maximum term of life in prison, with a minimum term to be fixed by the Board of Prison Terms and Paroles (since 1986, the Indeterminate Sentence Review Board).
We affirmed Marler's conviction in 1982.[1] In 1986, we denied her personal restraint petition alleging ineffective assistance of counsel.[2]
In 1989, the Legislature required that minimum terms for indeterminate offenders be consistent with the purposes of the Sentencing Reform Act (SRA).[3] This included offenders serving life sentences. In 1980, the Board set Marler's minimum term at 312 months, the high end of her SRA range.
In 1996, the Board found Marler not parolable, because of her significant infraction history and because she lacked insight, continued to minimize her responsibility, and had failed to address her history of substance abuse. The Board requested that Marler involve herself in counseling and treatment until her next scheduled hearing in February, 1998. Marler complied. But at the 1998 hearing, the Board found that Marler
shows almost no insight into why she was able or willing to carry out such a coldblooded act. Unlike a murder of passion, a contracted murder requires planning, calculation and forethought. The likelihood that such factors could again lead Ms. Marler to violence must be considered, especially since she shows such poor insight.[4]
The Board found Marler not parolable, added 18 months to her minimum term, and encouraged her to continue to involve herself in crime-related counseling and chemical dependency care. The new minimum term, 330 months, exceeded the standard range under the SRA.
Marler filed a personal restraint petition alleging the new minimum term violated Washington law, due process, and the ex post facto clauses of the United States Constitution, article I, section 10, clause 1, and the Washington Constitution, article I, section 23. She also alleged she had had a parole date before passage of the law requiring the Board to set SRA-consistent minimum terms for life offenders, and that by refusing to find her parolable, and by denying her good time and minimum custody, the Board and DOC violated her constitutional rights. We stayed her petition pending our decision in In re Personal Restraint of Haynes.[5]
While Marler's petition was stayed, the Board conducted another review hearing. In March 2000, the Board found Marler "conditionally parolable, via a MAP as this is necessary to reflect an appropriate transition for Ms. Marler's sentence."[6] The Board scheduled her next parole eligibility hearing to occur "upon completion of the MAP."[7] The Board stated the following reasons:

*746 The Board remains concerned about Ms. Marler's apparent inability to acknowledge her behavior. Therefore, a highly structured MAP is considered a mandatory preliminary to any actual parole. A MAP with no infractions and careful and scrupulous compliance with all conditions is the only acceptable course for this inmate, as a preliminary to a further [parole eligibility hearing under RCW 9.95.100].[8]
This court's stay was lifted in August 2000. Marler then supplemented her petition, alleging that by its March decision, the Board illegally extended her prison term indefinitely.

MAP
A MAP or Mutual Agreement Program is a transition release plan developed by DOC staff. Its purpose is "[t]o establish a system for developing release plans for offenders serving sentences for Murder First Degree," for whom it is considered mandatory.[9] The plan provides for "structured community reentry" by setting forth the facilities where the offender will be housed, the length of stay at each facility, and the expectations for specific programs and conduct.[10] Offenders are eligible only upon a Board determination of parolability or conditional parolability.[11]
The policy providing for the MAP was jointly adopted by DOC and the Board in 1992, and embodied in DOC Policy Number 350.300. According to the policy, DOC staff is responsible for developing the MAP, which is negotiated with the offender and is to be "finalized and re-submitted to [the screening committee for approval] within 90 days after receiving notice of parolability."[12] The policy contemplates that MAP planning for indeterminate offenders will begin "[w]hen an offender's six month review is conducted and the offender has 36 months or less [remaining in the minimum term, less good time]."[13]
The MAP process for Marler was ordered in March 2000. By August 2000, when she filed the supplement to her personal restraint petition, Marler had heard nothing. Sometime before January 2001, she received a draft. By the time of oral argument in May 2001, no MAP had been approved. As of the date of this opinion, we have been advised of no change.[14]
DOC records reflect 330 months as the "term last set" for Marler by the Board.[15] According to Marler, she completed that term, with good time credit as calculated by DOC, on June 17, 2000.

DISCUSSION
Inmates have no liberty interest in being released before serving the full maximum sentence.[16] A prisoner sentenced prior to the enactment of the SRA is "`subject entirely to the discretion of the Board, which may parole him now or never.'"[17] The Board is required to set the duration of confinement, or minimum term.[18] The minimum term establishes the date an inmate becomes eligible for parole.[19]
Marler contends that the Board's March 2000 decision failed to set any new minimum term, or to determine whether she *747 is rehabilitated and a fit subject for release, and thereby violated RCW 9.95.100[20] and the due process and ex post facto clauses of the constitution.
Marler first argues that the Board cannot refuse to release a prisoner who has completed her minimum term, except upon written findings expressly determining that her rehabilitation is not complete and she is not a fit subject for release. But RCW 9.95.100 does not require such findings. Rather, it requires the reversewithout an affirmative finding that an inmate is rehabilitated and fit for release, the Board has no authority to grant parole. Here, the Board found that successful completion of a MAP was a mandatory prerequisite to actual parole, and stated its reasons. This amounts to a determination that Marler is not presently fit for release. Until she is, the Board has no power to release her.[21]
Relying upon In re Personal Restraint of Powell,[22] Marler also alleges that predicating her eventual parole eligibility upon completion of the MAP negates the ameliorative effect of certainty, absent which the minimum term statute violates the ex post facto clause.
"A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it."[23] In Powell, the court compared pre-and post-SRA law governing indeterminate offenders, and held that because the new law provided advantages over the old, its disadvantages did not violate the ex post facto clause.[24]
Under former RCW 9.95.115, inmates sentenced to indeterminate life sentences were not eligible for parole until they had served 20 years (minus good time credit), and had been certified as parolable by the prison superintendent. In 1989, the Legislature eliminated the certification requirement and enacted Substitute House Bill 1457, which made RCW 9.95.009(2) applicable to mandatory life sentences. That statute requires the Board to fix the duration of confinement (the minimum term) for persons sentenced for crimes committed before July 1, 1984.[25] In doing so, the Board must consider the purposes, standards, and sentencing ranges adopted by the SRA.[26] For Powell, this meant he was not eligible for parole until he had served 30 years, rather than 20. Powell objected that this violated ex post facto prohibitions.
Finding SHB 1457 retrospective, and assuming without deciding that it was substantive, the Powell court concerned itself only with whether the new law disadvantaged the persons affected by it.[27] The court held that while there was a possibility of greater punishment, the new law had "ameliorative effects" and therefore did not violate ex post facto prohibitions.[28] The ameliorative effect lay in the "certainty of being considered" for parole resulting from abolition of the certification requirement: "Each [life sentence] prisoner must now be considered for parole at a set time."[29]
Marler argues this ameliorative certainty no longer exists for her, that until the MAP is created and approved, she is "off the clock." Once the MAP is operational, she *748 has at least 36 months before she will again be considered for parole. But there is no indication of how long it will take to develop the MAP. The court in Powell emphasized that under former RCW 9.95.115, an inmate had "no clue" as to when he or she would actually be considered for parole.[30] As Marler points out, this is precisely the situation in which she now finds herself, because she cannot know how long DOC will take to develop her MAP.
This, however, is not a result of SHB 1457. The ex post facto question is whether Marler's situation would be different under the old law. It appears to us it would not. Marler was considered for parole at the end of her minimum term, and so received the benefit of the certainty emphasized in Powell. Her present circumstance results not from the enactment of RCW 9.95.009(2) but from the fact that she has been consistently found not parolable. RCW 9.95.009(2) causes her no present disadvantage, and thus does not operate as an ex post facto law.
An inmate may be entitled to relief, however, where the Board fails to follow the law or its own procedures.[31] Such is the case here.
The statute requires the Board to make decisions about duration of confinement.[32] This the Board has failed to do. Marler has no set minimum term. A decision that an inmate is conditionally parolable via a MAP does not qualify as a decision on the duration of confinement unless the MAP process occurs within a predictable time frame. We note that such a time frame appears contemplated by the joint policy, which calls for DOC to develop the MAP within 90 days of the parolability determination. Here, however, that date passed in June, 2000. More than 14 months later, no MAP has been developed, and from all indications thus far, Marler may languish forever awaiting her MAP.
The MAP procedure employed here thus does not constitute a duration of confinement decision. Further, it effectively delegates the decision to DOC, in violation of RCW 9.95.009(2) and the Board's own policy. We therefore remand this matter to the Board for immediate determinations of a new minimum term.[33] Essentially, the Board must ensure immediate implementation of a MAP.
In this context, the Board must also address good time. Inmates have a protected liberty interest in the accrual of good time.[34] Marler points out that while she is off the clock waiting for the MAP, any good time she accrues has no value; the same is apparently true while she serves out the MAP. The Board's only response is that if she fails to complete the MAP, any good time will be credited. But the effect of good time is to accelerate the next review date,[35] which under the procedure here it cannot do. Upon remand, the Board must address the status of her good time before and during the MAP.
Marler makes a number of other arguments, which are either not well taken or are moot.[36] She states that she had been "given a parole date" before passage of SHB 1457, and argues that as to her, therefore, the law is ex post facto.[37] In Powell, the court considered a similar argument by Thompson, a co-petitioner. Like Powell, Thompson's minimum term under the new statute exceeded 20 years. But unlike Powell, Thompson had been certified as parolable *749 before the effective date of the new statute requiring SRA-consistent minimum term determinations, so elimination of the certification requirement had no ameliorative effect on him. The court held that as to Thompson "and others like him, SHB 1457 is an ex post facto law and therefore void," and that their parole release must be determined according to the law in effect when they committed their crimes.[38]
If Marler had been given a parole date, presumably, like Thompson, she had been certified as parolable. But Marler has served more than her SRA minimum term; if revised RCW 9.95.009(2) should not have applied to her in the first place, the question is moot. She is now in the post-minimum term limbo occupied by those whose fitness for release is not apparent to the Board, and who thus await their next review dates. If Marler indeed had a parole date before SHB 1457, the only relief any courtnow or thencould have offered her is that offered to Thompson: to have her parole release determined under former RCW 9.95.115, and to be "subject entirely to the discretion of the Board, which may parole [her] now or never."[39] As this accurately describes her status now, her claim for relief is moot.[40]
Marler makes a number of arguments about the Board's decision to extend her minimum term and deny parole. Parole is not a right, but a privilege conferred as an act of administrative grace, and rests exclusively within the discretion of the Board.[41]
For parole decisions, "`there is no set of facts which, if shown, mandate a decision favorable to the individual.'"[42] Any fact or consideration demonstrating that an inmate is not a fit subject for release is a sufficient reason to deny parole.[43] Further, if an inmate is not parolable, "[i]t is self-evident that... the minimum term is necessarily extended."[44] Lack of fitness for parole is sufficient reason for an exceptional new minimum term.[45]
Marler contends she was denied parole for failing to perform impossible conditions (mental health counseling) in violation of due process. This issue is also moot. The record indicates Ms. Marler did receive the suggested counseling. Even if she did not, however, there is no indication that was a reason for denial of parole in March 2000, and Marler has now been approved for the MAP. Marler also claims she was unconstitutionally denied minimum custody, but there is no constitutional right to a particular level of custody,[46] and this issue is also now moot, since the Board has authorized a MAP, which requires minimum custody.[47]
When the Board extends the minimum term beyond the SRA standard range, it must provide adequate written reasons.[48] Contrary to her argument, the Board's finding that Marler was not fit for release is adequate reason for an exceptional minimum term.[49] If the Board's reasons for *750 finding her not rehabilitated included her failure to confront her guilt, this was not a violation of the Fifth Amendment.[50] If its reasons were subjective and included psychological assessments, her right to equal protection was not violated because Marler was not treated differently from others sentenced under the indeterminate scheme.[51] Nor would reliance on such reasons constitute an abuse of discretion by the Board, since the parole release decision turns upon "purely subjective appraisals[,] ... a discretionary assessment of a multiplicity of imponderables."[52] Marler's compliance with requests the Board made of her does not make denial of parole a denial of due process, because there is no vested right to parole: "[T]here is no set of facts which, if shown, mandate a decision favorable to the individual."[53]
Finally, Marler contends that 16 years ago, she was denied good time without due process. This claim is moot, and barred by laches. The good time credit she seeks is attributable to time she served as a boarder in a California prison in 1983-84. Marler has had at least five parole hearings since her return from California; she has repeatedly been found not fit for parole. Good time credits serve only to accelerate parole eligibility review; they have no effect on the maximum term.[54] There is thus no meaningful relief available even if her claim is correct. In addition, she waited 16 years to advance her arguments, and we find this delay too great.[55]

CONCLUSION
We agree with Marler that the Board violated the statute and its own procedures by imposing a MAP with no time frame. We also agree that her accrual of statutory good time before and during the MAP must be clarified. We therefore grant her petition on those issues and remand to the Board for immediate determination of a new minimum term (essentially, immediate implementation of a MAP) and for clarification of good time. As to all other issues, the petition is denied.
GROSSE and BAKER, JJ., concur.
NOTES
[1] State v. Marler, 32 Wash.App. 503, 648 P.2d 903 (1982).
[2] In re Personal Restraint of Marler, No. 16657-3-I (Wash.Ct.App. Oct.28, 1986).
[3] RCW 9.95.009(2).
[4] Personal Restraint Petition, Ex. B at 4.
[5] 100 Wash.App. 366, 374, 996 P.2d 637 (2000) (Board had discretion to deny parole on grounds inmate is not a fit subject for release, which is adequate reason under Board regulations and justifies exceptional minimum term).
[6] Resp. to Pet. Supp. Briefing, Ex. 3 at 1.
[7] Id.
[8] Id. at 3, 996 P.2d 637.
[9] Resp. to Pet. Supp. Br., Ex. 4 at 1.
[10] Id.
[11] The derivation and precise meaning of "conditional parolability" are not revealed in the record or briefs.
[12] Id. at 3.
[13] Id. at 2.
[14] Marler alleges that at least one other inmate has been waiting more than a year for development of her MAP.
[15] See Supp. to Personal Restraint Petition, Ex. L at 1.
[16] Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); In re Personal Restraint of Ayers, 105 Wash.2d 161, 164-66, 713 P.2d 88 (1986).
[17] In re Personal Restraint of Ecklund, 139 Wash.2d 166, 174-75, 985 P.2d 342 (1999) (emphasis omitted) (quoting In re Personal Restraint of Powell, 117 Wash.2d 175, 196, 814 P.2d 635 (1991)).
[18] RCW 9.95.009(2).
[19] RCW 9.95.052.
[20] "Any convicted person undergoing sentence in the penitentiary or the reformatory, not sooner released under the provisions of this chapter, shall, in accordance with the provisions of law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted, or the maximum term fixed by the court where the law does not provide for a maximum term. The board shall not, however, until [her] maximum term expires, release a prisoner, unless in its opinion [her] rehabilitation has been complete and [she] is a fit subject for release." RCW 9.95.100.
[21] See RCW 9.95.100.
[22] 117 Wash.2d 175, 184, 814 P.2d 635 (1991).
[23] Powell, 117 Wash.2d at 185, 814 P.2d 635.
[24] Powell, 117 Wash.2d at 190-91, 814 P.2d 635.
[25] RCW 9.95.116(1).
[26] RCW 9.95.009(2).
[27] Powell, 117 Wash.2d at 185, 814 P.2d 635.
[28] Powell, 117 Wash.2d at 190-91, 814 P.2d 635.
[29] Powell, 117 Wash.2d at 191, 814 P.2d 635.
[30] Powell, 117 Wash.2d at 189, 814 P.2d 635.
[31] In re Cashaw, 123 Wash.2d 138, 147-48, 866 P.2d 8 (1994) (citing In re Locklear, 118 Wash.2d 409, 419-20, 823 P.2d 1078 (1992)).
[32] RCW 9.95.009(2).
[33] See Locklear, 118 Wash.2d at 419-21, 823 P.2d 1078 (where Board failed to comply with statute requiring consideration of SRA standards, remanded); Cashaw, 123 Wash.2d at 150, 866 P.2d 8 (proper relief for failure to follow regulations in parole determinations is remand).
[34] RCW 9.95.070; In re Personal Restraint of Mota, 114 Wash.2d 465, 474, 788 P.2d 538 (1990).
[35] See RCW 9.95.110.
[36] A claim is moot if the court can provide no effective relief. In re Cross, 99 Wash.2d 373, 376-77, 662 P.2d 828 (1983).
[37] See Personal Restraint Petition at 8.
[38] Powell, 117 Wash.2d at 196, 814 P.2d 635.
[39] Powell, 117 Wash.2d at 196, 814 P.2d 635.
[40] Monohan v. Burdman, 84 Wash.2d 922, 530 P.2d 334 (1975), is not to the contrary. There rescission of a tentative release date was held not mooted by subsequent release because of the possibility of adverse effects in future proceedings. Monohan, 84 Wash.2d at 925, 530 P.2d 334. Here, the Board does not acknowledge Marler ever had a tentative release date.
[41] In re Personal Restraint of Haynes, 100 Wash. App. 366, 372, 996 P.2d 637 (2000).
[42] In re Personal Restraint of Ayers, 105 Wash.2d 161, 165, 713 P.2d 88 (1986) (quoting Greenholtz, 442 U.S. at 10, 99 S.Ct. 2100).
[43] Haynes, 100 Wash.App. at 371, 996 P.2d 637.
[44] Ayers, 105 Wash.2d at 167, 713 P.2d 88.
[45] In re Personal Restraint of Locklear, 118 Wash.2d 409, 412-15, 823 P.2d 1078 (1992); Haynes, 100 Wash.App. at 374, 996 P.2d 637.
[46] In re Personal Restraint of Dowell, 100 Wash.2d 770, 773-74, 674 P.2d 666 (1984).
[47] See DOC Policy Number 350.300.
[48] RCW 9.95.009(2); Locklear, 118 Wash.2d at 418, 823 P.2d 1078.
[49] See In re Personal Restraint of Ecklund, 139 Wash.2d 166, 176, 985 P.2d 342 (1999) (citing Addleman v. Board of Prison Terms & Paroles, 107 Wash.2d 503, 511, 730 P.2d 1327 (1986); Locklear, 118 Wash.2d at 412-15, 823 P.2d 1078); Haynes, 100 Wash.App. at 374, 996 P.2d 637.
[50] Ecklund, 139 Wash.2d at 172-73, 985 P.2d 342.
[51] See Powell, 117 Wash.2d at 197, 814 P.2d 635.
[52] Haynes, 100 Wash.App. at 372, 996 P.2d 637 (internal quotations omitted).
[53] Ayers, 105 Wash.2d at 165, 713 P.2d 88; see also Ecklund, 139 Wash.2d at 175, n. 8, 985 P.2d 342.
[54] RCW 9.95.070.
[55] See Buell v. Bremerton, 80 Wash.2d 518, 495 P.2d 1358 (1972).