IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80165-1-I |
| CHRISTINE CRABTREE, | ) | DIVISION ONE |
| Respondent, | ) | UNPUBLISHED OPINION |
| and | ) | |
| DONALD CLINTON CRABTREE, | ) | |
| Appellant. | ) | |

SMITH, J. — Donald Crabtree appeals an order finding him in contempt for failing to pay child support and alimony to Christine Crabtree under a South Carolina divorce decree. We hold substantial evidence supports the trial court's contempt findings and the trial court did not abuse its discretion by ordering Donald[1] to pay a remedial sanction of $100 per day for each day that any past-due amounts remained owing, after the date set forth in the court's order. Therefore, we affirm.

FACTS

Donald and Christine were married in Washington in 2000 and divorced in South Carolina in January 2018. In its "Final Order and Decree of Divorce

_____

[1] Because the parties share a last name, we refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

(Amended)," entered January 26, 2018 (South Carolina Order), the South Carolina family court imputed income to Donald in the amount of $80,000 per year. It also ordered Donald to pay child support in the amount of $1,404 per month and alimony in the amount of $1,600 per month. In dividing the marital estate, the South Carolina court awarded the parties' South Carolina home to Christine; awarded a house in Medical Lake, Washington, to Donald; and ordered Donald to make an equalization payment to Christine in the amount of $37,957, payable on "the earlier of the refinance or sale of [the Medical Lake property] or 120 days from the date this Order is filed."

Donald appealed the South Carolina Order to the South Carolina appellate court. In June 2018, after Donald filed his notice of appeal, the South Carolina family court entered a consent order in which both parties indicated that they intended to sell the property awarded to them but acknowledged that they were prohibited from doing so while Donald's appeal was pending. Specifically, the consent order explained that "the effect of the [South Carolina Order] regarding equitable distribution . . . is stayed pending the appeal." In the consent order, the parties agreed that notwithstanding the stay, Donald could list the Medical Lake property for sale and that "the money owed to [Christine] shall be deducted from any sale proceeds from the sale of this property and paid directly to [Christine] at closing." The parties also agreed that Donald "currently owes [Christine] $64,588.66 ($37,957 by way of equitable division and $26,631.66 as attorney's fees, costs and reimbursement)." Donald later sold the Medical Lake property, and in October 2018, Christine received $86,036.01 upon the sale of that

property. According to Christine's later declaration, "[t]he breakdown of the proceeds distributed to [her] was $28,881.66 for attorney fees, costs, appellate fees, and other reimbursements; $37,957.00 in equitable distribution; $4,719.40 in past due child support; $12,295.75 in past due spousal support; and $2,182.20 in attorney fees from a contempt hearing in July, 2018." Christine also declared that Donald approved this breakdown, as evidenced by his signature on an October 8, 2018, e-mail from the title closer for the sale of the Medical Lake property.

At some point, Donald and Christine each moved to Washington. On March 20, 2019, Christine filed in the trial court a request to register the South Carolina Order, a notice of registration, and a motion for contempt. The same day, she obtained an order directing Donald to appear and show cause with regard to her contempt motion. The request to register, the notice of registration, Christine's motion, and the show cause order were served on Donald on March 21, 2019. In her motion for contempt, Christine alleged that Donald had not paid child support or alimony for five months and, thus, was $7,020 behind on child support and $8,000 behind on alimony. She also requested remedial sanctions, including an order that Donald "[p]ay a fine for each day the court's orders are not followed."

Donald did not request a hearing to contest the validity or enforcement of the South Carolina Order, but in a declaration filed April 10, 2019, he contended that Christine was "up to speed on Child Support and Alimony." He asserted, specifically, that the $37,957 equalization payment under the South Carolina

Order was "automatically held in abeyance" pending his appeal and that because he nonetheless paid that amount to Christine following the sale of the Medical Lake property, Christine was "paid up with the [$]37,957 . . . up until Mid December of 2019." Donald further contended that Christine "has not provided any statement or receipt that all financial contended matters have been satisfied when she received the $86,036.01"; that in terms of employment, he was in the process of "launching a platform for organizing volunteers for outreach" that was "not a pipe-dream so to speak, [but] is at hand"; and that the South Carolina court imputed income to him based on his being a "'professional engineer'" even though he was not. He also asserted that past psychological evaluations "showed [him] to be candid and Christ[ine] to be exaggerating and many other useful facts supporting [his] case." He asked the trial court to give him an "opportunity to file for a retro-active reduction in spousal support in accordance with his limited earnings these years to make support payments sustainable for both parties," and he attached a copy of his opening brief in the appeal of the South Carolina Order "so that the Court might understand the injustice [he's] suffered." He also attached financial declarations purporting to show the debts that the proceeds of the Medical Lake property were used to satisfy and why he was unable to make payments as set forth in the South Carolina Order.

In her reply declaration, Christine pointed out that under the June 2018 consent order, the parties agreed that the $37,957.00 equalization payment would be made notwithstanding the stay pending appeal. Christine also asserted that even after closing costs, the proceeds paid to Christine, and a loan payoff,

4

Donald was left with $123,978.99 in proceeds from the sale of the Medical Lake property. She asserted that in December 2018, Donald acknowledged by text message that he continued to owe her support payments and even requested her bank account information so that he could pay the support owing for October, November, and December 2018. Thus, Christine contended, Donald "had the ability to pay his ongoing support obligation, which he even expressed his intent to do in December, 2018. Unfortunately, he simply chooses not to do so." Christine also declared that Donald "has been previously held in contempt three separate times for failing to pay support and follow court orders: April 6, 2016, May 23, 2017, and most recently on July 25, 2018." Christine attached copies of the relevant contempt orders to her declaration.

The trial court held a contempt hearing on April 26, 2019, and heard argument from Christine's counsel and from Donald, who appeared pro se. At the hearing, the commissioner initially stated that she had "read everything." But when Donald asked the commissioner whether she had read the South Carolina appeal brief that he attached to his declaration, the commissioner responded that she had not, indicating that the brief was "irrelevant."

Donald argued at the hearing that his ability to seek out employment had been inhibited by an outstanding South Carolina bench warrant and indicated that to have the warrant removed, "it would be good if [he] had something notarized" from Christine saying that she had been paid for what she was owed in 2018. Donald also argued that the income imputed to him under the South Carolina Order was based on credentials he did not have and a job offer that

5

ultimately did not come to fruition. He acknowledged that he was "not up-to-date" on payments to Christine but contended that he did not have the ability to pay her and that his failure to pay was not willful. Donald offered to provide tax returns to show his actual earnings, and the commissioner responded, "No because courts can say different things about imputed earnings and whether you're working up to your [full potential]."

In response to Donald's argument, Christine argued, through counsel, that "[d]espite the fact that the warrant out of South Carolina may or may not be preventing him from seeking employment, . . . the record is clear . . . that he just has not sought employment over the last three years." Christine pointed to findings made by the South Carolina court in the prior contempt orders that were attached to her reply declaration, contending, "they all say the same thing of [Donald] just repeatedly saying that this is what my plan is and he unfortunately just does not execute on that plan."

The trial court ultimately found that Donald was able, but not willing, to follow the South Carolina Order and held him in contempt. The court entered judgment in Christine's favor for $7,020.00 in past-due child support, $9,600.00 in past-due alimony, and $3,720.00 for attorney fees and costs.[2] The court also ordered that the "[j]udgment shall be paid in full within 30 days. If not, an additional fine of $100 per day shall be imposed until the full judgment amount is paid." Donald appeals.

---

[2] The amount of the money judgment took into account both (1) additional past-due amounts that accrued after Christine filed her contempt motion and (2) a single child support payment that Donald made before the contempt hearing.

ANALYSIS

*Contempt Order*

Donald contends that the trial court erred by finding him in contempt and ordering him to pay $100 for each day that his payment of the contempt judgment was late. We disagree.

Because Christine registered the South Carolina Order in Washington, it was "enforceable in the same manner and [was] subject to the same procedures as an order issued by a tribunal of this state." RCW 26.21A.510(2). To that end, under the law of this state, "[i]f an obligor fails to comply with a support or maintenance order, a petition or motion may be filed . . . to initiate a contempt action as provided in chapter 7.21 RCW." RCW 26.18.050(1). Under that chapter, "[c]ontempt of court" means, as relevant here, "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). If, in a contempt hearing involving a support or maintenance order, "the obligor contends . . . that he . . . lacked the means to comply with the . . . order, the obligor shall establish that he . . . exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself . . . able to comply with the court's order." RCW 26.18.050(4).

Upon a finding of contempt, "[a] judge or commissioner of . . . the superior court . . . may impose a sanction for contempt of court." RCW 7.21.020. As relevant here, on the motion of a person aggrieved by contempt, "[i]f the court finds that [a] person has failed or refused to perform an act that is yet within the person's power to perform, the court may . . . impose . . . [a] forfeiture not to

exceed two thousand dollars for each day the contempt of court continues." RCW 7.21.030(2)(b). In reviewing a contempt order, "[w]e review the trial court's factual findings for substantial evidence and then determine whether the findings support the conclusions of law." In re Marriage of Myers, 123 Wn. App. 889, 893, 99 P.3d 398 (2004). "Evidence is 'substantial' when it is 'sufficient to persuade a fair-minded person of the truth of the matter asserted.'" In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017) (quoting In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)).

"Punishment for contempt of court is within the sound discretion of the trial court, and this court will not reverse a contempt order absent an abuse of that discretion." In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). "A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons." James, 79 Wn. App. at 440.

Here, the trial court's contempt finding is supported by substantial evidence. Specifically, Donald himself acknowledged at the contempt hearing, "I don't deny that I'm not up-to-date." And although he contended that this was because he lacked the means to pay the amounts set forth in the South Carolina Order, substantial evidence in the record supports a finding that he did not exercise due diligence in rendering himself able to comply with that order. Specifically, Donald did not present any evidence to the commissioner to contradict Christine's declaration that Donald received more than $120,000 in proceeds from the sale of the Medical Lake property. Furthermore, Christine presented evidence, in the form of three prior contempt orders entered in South

8

Carolina, that Donald did not exercise due diligence in seeking employment. In the first of these orders, from April 2016, the court found Donald in contempt for failing to pay child support and the children's tuition payments. In doing so, the court also found that Donald "should have found employment by this time"; that his "failure to find employment is through his own inaction"; and that "[t]he marketing of his business prototype . . . has not been successful for over a year although [Donald] has hopes that it will be successful." The court also "d[id] not believe there is a business of [Donald]'s, or hopes of a successful business, that would be negatively impacted by his obtaining employment elsewhere commensurate with his skills."

In another order from May 2017, in which the court found Donald in contempt for failing to make house payments as set forth in the South Carolina Order, the court observed, "If [Donald] feels he can not afford to make these payments, then he should seek employment commensurate with his education, employment history, and ability to earn." And in a third order from July 2018, in which the court found Donald in contempt for failing to pay child support and alimony, the court wrote, "[I]nstead of looking for employment based on his educational background and past work experience, [Donald] continues to work on developing computer software programs which have not resulted in much income in the past three (3) years and he has the ability, experience and educational background to earn sufficient income to timely pay his alimony and child support obligations."

In short, and although the commissioner's findings on this point should

9

have been more thorough, there is substantial evidence in the record to support the trial court's finding of contempt. Therefore, the trial court did not err by finding Donald in contempt for failing to pay child support and alimony as set forth in the South Carolina Order. Furthermore, Christine expressly requested remedial sanctions in her contempt motion. Given Donald's documented history of failing to comply with the South Carolina Order, his documented lack of diligence in seeking employment, and the absence of any evidence that he made efforts to seek employment, the trial court did not abuse its discretion by imposing sanctions of $100 per day for each day that any part of the contempt judgment was late.

Donald raises a number of arguments in support of reversal, but none of them are persuasive.

First, Donald contends that his failure to comply with the South Carolina Order was not willful because he lacked the means to comply. To this end, he also argues that the South Carolina bench warrant "eclipses all his standard opportunities for the type of income being demanded of him." But as discussed, an obligor who contends that he lacked the means to comply with a support order has the burden of establishing that he "exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself . . . able to comply." RCW 26.18.050(4). Donald points to no evidence that he made an effort, bench warrant notwithstanding, to seek employment or otherwise render himself able to comply with the South Carolina Order. He also points to no evidence to support his assertion that employment was denied to him as a result

10

of the bench warrant. Therefore, his contention fails.

Donald also argues that the amount of income the South Carolina court imputed to him was unfair and not valid. He argues further that he has "been enduring ongoing mischaracterizations and claims that have prevented him from succeeding" and points to the psychological evaluations that he asserts show Christine as being not credible and Donald as being candid. He asserts that the South Carolina Order was contrary to this "manifold evidence that [Christine] is not credible." But Donald's complaints about the South Carolina Order are not properly before the court in a proceeding for violation of that order. See RCW 26.21A.530(1)(e) (providing, as relevant here, that a party contesting the validity or enforcement of a registered support order has the burden of proving that "[t]here is a defense under the law of this state to the remedy sought"); see also In re J.R.H., 83 Wn. App. 613, 616, 922 P.2d 206 (1996) ("According to Washington's 'collateral bar' rule, 'a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid.'" (quoting State v. Coe, 101 Wn.2d 364, 369-70, 679 P.2d 353 (1984))).

Donald next argues that the trial court was biased because the commissioner told him that his defense regarding ability did not matter. He contends in support of this argument that "[i]f the [South Carolina O]rder put its basis for imputed income upon a unrealized and informal job offer that did not pan out, then the Court must be willing to re-address the income upon the change of circumstance, especially during enforcement, because the foundations

to the basis of that ruling have changed." But this contention amounts to an assertion that the trial court should have considered retroactively modifying the South Carolina Order. Yet, even setting aside the fact that retroactive modifications are disfavored, see In re Marriage of Cummings, 101 Wn. App. 230, 234, 6 P.3d 19 (2000), Donald did not petition to modify the order. Therefore, the trial court was without authorization to do so. See RCW 26.21A.510(3) ("Except as otherwise provided in this chapter, a tribunal of this state shall recognize and enforce, but may not modify, a registered support order if the issuing tribunal had jurisdiction."); see also RCW 26.21A.550, .560 (setting forth the requirements for modification of a foreign child support order). Thus, by steering Donald away from his ability argument and toward the arguments that it could actually consider, particularly given that Donald had only five minutes to make his argument, the trial court did not exhibit bias.

Donald also argues that the trial court was biased because the commissioner refused to consider his tax records, did not read his South Carolina appeal brief, "did not approach a foreign order with caution, even one on appeal," repeatedly interrupted him during the hearing, and admitted when questioned that she had not read everything. But Donald did not file any tax records with the court, and in any event, the commissioner correctly observed that those records were not relevant to whether Donald was in contempt. And Donald cites no authority for the proposition that foreign orders, even those that are on appeal, must be approached "with caution." Rather, once registered, such orders are "enforceable in the same manner . . . as an order issued by a tribunal

12

of this state." RCW 26.21A.510(2). Additionally, it is clear from the hearing transcripts that the commissioner interrupted Donald on multiple occasions not because she was biased against him, but in an attempt to redirect him, in the limited time he had to make his argument, toward arguments the court could actually consider in the context of a contempt proceeding. Finally, the commissioner was correct that the South Carolina appeal brief was not relevant to the sole issue before the court, i.e., whether Donald was in contempt. Thus, although the commissioner should have reviewed all of the materials presented to her, a failure to do so under these circumstances does not constitute evidence of bias. For these reasons, Donald fails to establish that the trial court exhibited reversible bias. Tatham v. Rogers, 170 Wn. App. 76, 96, 283 P.3d 583 (2012) (observing, in context of the appearance of fairness doctrine, that because trial court is presumed to perform its functions without bias or prejudice, the party asserting bias "'must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker'" (quoting In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000))).

Donald next contends, as he did below, that the equalization payment he made to Christine upon the sale of the Medical Lake property should be treated as an advance on child support and alimony until Christine provides proof that the amounts she received were applied as contemplated in the title closer's October 8, 2018, e-mail. But he cites no authority for the proposition that Christine is required to provide such proof, much less that her failure to do so

should excuse him from complying with the South Carolina Order. Therefore, his contention fails.

Donald next argues that the court acted "vengefully versus justly" in imposing the $100 per day sanction for each day that payment of the contempt judgment was late. But as discussed, Christine expressly requested remedial sanctions in her contempt motion. Furthermore, under the circumstances presented here, those sanctions were well within the trial court's discretion to impose in order to coerce Donald to comply and thus avoid paying the sanction. Therefore, Donald's argument is not persuasive.

Finally, Donald contends that the South Carolina Order is unlawful. He asserts, in essence, that because it was "founded on the novel idea of religious abuse," the order—and thus the enforcement thereof—infringe on his constitutionally protected rights to free exercise of religion and freedom of speech. But this argument is being raised for the first time on appeal. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."). Furthermore, it is not adequately briefed to discern whether any alleged constitutional error was manifest, much less to warrant consideration on the merits. Therefore, Donald's contention fails. See RAP 2.5(a)(3) (party may raise for the first time on appeal a manifest error affecting a constitutional right); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument"); see also Westberg v. All-Purpose Structures Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997) (pro se litigants are held to

14

same standards as attorneys).

*Attorney Fees*

Christine requests attorney fees on appeal. Under RCW 26.18.160, the prevailing party in an action to enforce a support or maintenance order "is entitled to a recovery of costs, including an award for reasonable attorney fees." This entitlement applies to appellate fees. In re Paternity of M.H., 187 Wn.2d 1, 13, 383 P.3d 1031 (2016).

Because Christine is the prevailing party, we grant her request for attorney fees subject to her compliance with RAP 18.1.[3]

We affirm.

WE CONCUR:

---

[3] Because Christine is entitled to fees under RCW 26.18.160, we do not address her contention that she is also entitled to fees under RAP 18.9 because Donald's appeal is frivolous. We note, however, that although Donald's arguments ultimately do not entitle him to relief on appeal, it was not, as Christine contends, "difficult to ascertain" the reasons why Donald believed the trial court's order was erroneous.